SULLIVAN H. McCOLLISTER and Others v. JAMES H. BISHOP
and Others.

December 4, 1899.

Nos. 11,783—(102).

**Bond of Assignee—Leave of Court to Sue.**

*Held*, that the omission to obtain leave of court to sue on the bond of
an assignee in insolvency is not ground of general demurrer to the com-
plaint.  Following former decisions.

**Complaint Good as to Surety.**

Also, that the complaint states facts constituting a cause of action
against the surety on the bond,—at least, for fraud and deceit in inducing
the principal, by false and fraudulent representations, to deposit the trust
fund in an insolvent bank where it was lost.

**G. S. 1894, § 2849.**

Also, that G. S. 1894, § 2849, subd. 3, is constitutional.

**Trustee a Guarantor of Trust Funds.**

Also, that, if a trustee enters into any arrangement with reference to
trust funds which surrenders or limits his control over them, he becomes a
guarantor of the fund, irrespective of his motives, or whether his sur-
render of control was the cause of the loss of the fund.  But *held*, further,
that the facts do not bring this case within that rule.

Appeal by defendants Bishop and Fidelity & Deposit Company
of Maryland from an order of the district court for Hennepin
county, Brooks, J., overruling demurrers to replies.  Affirmed as to
the company, and reversed as to Bishop.

*Carman N. Smith*, for appellants.

*Smith & Smith* and *Byron Sutherland*, for respondents.

MITCHELL, J.[1]

This action was brought by the plaintiffs, as creditors of the Peo-
ple's Savings & Loan Association, an insolvent corporation, against
defendant Bishop, former assignee of that association, and the Fi-
delity & Deposit Company of Maryland, the surety on Bishop's bond

[1] BROWN, J., took no part, the case having been argued before he took his
seat.

as assignee. The defendant Sutherland is the present receiver of the association, appointed in place of Bishop.

It is difficult to tell from the complaint whether this action was intended to be on the bond, or one for fraud and deceit. After alleging the insolvency of the People's Savings & Loan Association, its assignment of all its assets under the insolvency law to Bishop and the execution by him as principal, and by the Fidelity & Deposit Company as surety, of a bond conditioned for his faithful performance of all his duties, the complaint further alleges that, when Bishop applied to the Fidelity & Deposit Company to become surety on his bond, it made it a condition precedent to doing so that he should agree that all the moneys and funds belonging to the People's Savings & Loan Association which should come into his hands as assignee should be deposited with the Northern Trust Company, to which Bishop assented, and inserted it as one of the conditions of his written application to the Fidelity & Deposit Company to become his surety; that at this time the Fidelity & Deposit Company had full notice that the Northern Trust Company was insolvent, and was not a secure and safe place to deposit money, and that money deposited in it by Bishop would not and could not be repaid to him when wanted, but that the Fidelity & Deposit Company then and there represented to Bishop that the Northern Trust Company was a solvent and reliable institution, and that all moneys deposited with it would be promptly repaid to him; that Bishop, believing these representations as to the solvency of the Northern Trust Company, and in reliance upon them, afterwards deposited with the Northern Trust Company trust funds to the amount of $11,000; that in fact the Northern Trust Company was not solvent, or a safe and secure place to deposit money, as represented by the Fidelity & Deposit Company; that part of this money, to wit, $5,763.91, never was repaid, and that in December, 1896, the trust company failed, and on its own application was declared insolvent by the district court; that, upon the appointment of Sutherland as Bishop's successor, the court made an order requiring the latter to pay over to the former all property and money in his hands as assignee; that Sutherland demanded payment of this $5,763.91 from both Bishop and the Northern Trust Company, but both of them

have wholly failed to pay. The Northern Trust Company was a corporation organized under the act for the organization of annuity, safe-deposit, and trust companies (G. S. 1894, § 2841 et seq.). It is also alleged that the deposit of the money with the Northern Trust Company was not made under or in pursuance of any order of court.

To the replies to their answers each of the defendants, Bishop and the Fidelity & Deposit Company, interposed a separate general demurrer, both of which the court overruled. Under a familiar rule, these demurrers reach back to the complaint.

1. The first point made by the defendants is that, treating this as a suit on the bond, the complaint did not state a cause of action, because it did not allege that the court had given the plaintiffs permission to sue on the bond. This court has repeatedly held that this is no part of the cause of action, and cannot be reached by general demurrer. Leuthold v. Young, 32 Minn. 122, 19 N. W. 652; Litchfield v. McDonald, 35 Minn. 167, 28 N. W. 191. Counsel for defendants seeks to distinguish these cases from the present one, but we do not think that the attempted distinction is well taken.

2. We are satisfied that the complaint states a cause of action against the Fidelity & Deposit Company,—at least, for fraud and deceit. If it be held to be an action for fraud and deceit, the question of plaintiffs' legal capacity to sue cannot be raised by general demurrer.

3. The complaint either states a cause of action on the bond against Bishop, or it states no cause of action at all against him. The complaint undoubtedly states facts sufficient to constitute a cause of action against him, unless neutralized and avoided by other allegations. It will have been observed that the complaint alleges, in substance, that Bishop deposited the money with the Northern Trust Company in good faith, honestly believing that it was a solvent and safe depositary. It was an institution with which he was authorized to make the deposit, and as to which the statute expressly provided that when he made such a deposit

"He and his sureties shall thereafter be relieved and discharged from all liability therefor until the same shall again be delivered by said corporation to him or to his successors." G. S. 1894, § 2849, subd. 3.

This provision of the statute may be an unwise one, but we fail to see any ground upon which a court would be justified in declaring it unconstitutional. It was added to the original act of 1883 by the amendatory act of 1885 (chapter 3), and is germane to the general subject expressed in the title of the original act. Nor is there any ground for limiting its application to deposits made pursuant to an order of court. Where a court orders one of its officers to deposit funds in a particular place, it is the court, and not the officer, who makes the deposit, and the latter needs no such protection as that afforded by this statute. Moreover, the last clause of subdivision 3 is an entirely independent provision, in no way dependent upon the two preceding ones, and extends to persons acting in a trust capacity, who are neither officers of court nor in court, and consequently are not subject to its orders or directions.

4. Counsel for the plaintiffs insist, however, that, irrespective of the questions of the validity and construction of this statute, the allegations of the complaint as to the agreement between Bishop and his surety that the trust funds were to be deposited with the Northern Trust Company render the former liable for the money.

The principle invoked is that, if a trustee enters into any arrangement with reference to the trust funds which surrenders or limits his control over them, he is guarantor of the fund, irrespective of his motives, or whether his surrender of control was the cause of the loss. This undoubtedly is the rule, and it is an eminently salutary one. But in our judgment the facts pleaded do not bring this case within it. It is customary, as well as entirely proper, for these fidelity companies, before executing bonds as surety, to insist on being advised, and having some understanding with their proposed principal, as to where the trust funds will be deposited. This is a matter which affects the risk which they will assume if they execute a bond. It also enables them to keep track of the conduct of their principal with regard to the disposition of the fund. The facts pleaded in this case do not show any surrender in whole or in part of the principal's absolute control over the trust fund. He had the right to deposit the money in his own name as assignee. He had the right to draw it out as he saw fit. His surety had no control of, or veto power over, these matters. He had the absolute

legal power to change the depositary whenever he saw fit.   It is true that, if the Fidelity & Deposit Company was dissatisfied with his doing so, it could take steps to discharge itself, and to require him to give a new bond.   But this it had the right to do under any circumstances.   Laws 1895, c. 295.

Counsel greatly rely on the leading case of Salway v. Salway, 2 Russ. & M. 215, afterwards appealed to the house of lords, and there affirmed, under the title of White v. Baugh, 3 Clark & F. 44. But the facts in that case are clearly distinguishable, and at the same time illustrate the application of the rule invoked here.   In that case, under an agreement between a receiver and his sureties, funds were by the receiver turned over to one Anderson, a partner of one of the sureties, and by him deposited in the name of the two sureties; and all drafts upon the moneys were to be written out by Anderson, and then signed by the receiver, thus placing the fund where the receiver could not draw out a dollar without Anderson's approval, he being thus made a necessary party to the drawing out of every cent of the money.   Our conclusion is that the facts pleaded did not, of themselves, amount to a surrender or limitation of Bishop's power of control over the fund, so as to render him liable as guarantor of the fund, within the rule invoked.

Order affirmed as to the Fidelity & Deposit Company, and reversed as to Bishop.